| 216  | 301 |
| f219 | 301 |

## Weaver *v.* Sides, Appellant.

*Vendor and vendee—Option—Coal land—Construction of agreement.*

Where a vendor sells at the option of the vendee, and agrees to convey coal by good and sufficient deed within eighteen months from date, and the vendee agrees to pay, apart from hand money, one-third in nine months, and the balance in eighteen months, deferred payment to be secured by mortgage, "in case the land upon examination is found satisfactory," the option is to be exercised within nine months from the date of the agreement.

Statement of Facts—Assignment of Errors.          [216 Pa.

Argued Oct. 15, 1906. Appeal, No. 53, Oct. T., 1906, by defendants, from judgment of C. P. Indiana Co., June T., 1903, No. 219, on verdict for plaintiff in case of J. H. Weaver v. John Sides and Matilda A. Sides, his wife, and Ann Barnes. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Ejectment for land in Green township. Before PATTON, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows :

[As we construe this agreement, the first thing that was necessary for Mr. Sides to do was, as the article says, " present to Mr. Weaver a good and sufficient deed, clear of all incumbrances." If that had been done the day that agreement was written, on March 21, 1901, then it would have been Mr. Weaver's duty, in nine months from that day, to have paid the one-third of the purchase money, and in eighteen months from that day to have paid the balance of the purchase money. But there was a covenant that Mr. Sides had eighteen months in which to fulfill the agreement; that I take it meant that he had eighteen months to prepare a good and sufficient deed clear of incumbrances.] [3]  There may have been judgments against this property, there may have been outstanding liens and incumbrances, and therefore this agreement provided that Mr. Sides was not bound to tender the deed until eighteen months from that date, namely, until September 20, 1902. At that time Weaver tendered him the purchase money, and he has followed it up by a tender in court. [In our opinion Mr. Weaver has complied with all the law required him to do under this agreement. As we view the law, it would be your duty in this case to render a verdict for the land described in the writ against John Sides and Ann Barnes. . . .

In this case, gentlemen, your verdict should be in favor of the plaintiff, J. H. Weaver, and against John Sides and Ann Barnes, for the land described in the writ.] [4]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (3, 4) above instructions, quoting them.

*J. N. Banks*, with him *William Banks*, for appellants.—An agreement to sell land with no obligation on the other party to buy, and vendor to make a deed on specified notice from the other party, but no obligation to give such notice, is an option and time is of its essence : Swank v. Fretts, 209 Pa. 625 ; McMillan v. Philadelphia Co., 159 Pa. 142; Neill v. Hitchman, 201 Pa. 207.

*D. B. Taylor*, with him *C. E. Sprout*, for appellee.—If an acceptance is not made within the time fixed, the owner is no longer bound by his offer and the option is at an end : McMillan v. Phila. Co., 159 Pa. 142.

The contract is clear and unambiguous ; the parties are bound by its plain words : Shafer v. Senseman, 125 Pa. 310.

The case of Swank v. Fretts, 209 Pa. 625, relied upon by the appellants to sustain their contention that the limit of time for acceptance is the date fixed for the first payment, is not in point. In that case there was no time limit in the option; there was a provision that a failure to make the first payment within fifty days from the date should render the agreement null and void. The court held that to be the apparent limit of time for acceptance ; no notice of acceptance was given until more than two years after the date of the agreement.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1907 :

This is an action of ejectment brought by J. H. Weaver, the plaintiff, and the appellee here, against the defendants, the appellants here, to recover the coal underlying 150 acres of land in Green township, Indiana county, which John Sides and his wife sold the plaintiff by a contract in writing dated March 21, 1901. The right of the plaintiff to recover turns upon the proper construction of the agreement. The parts of the contract involved in this controversy are as follows : " The said parties of the first part (John Sides and wife) hereby bargain and sell unto the party of the second part (J. H. Weaver) . . . . at the option of the said parties of the second part, and agree to convey to them, their heirs or assigns, by good and sufficient deed, clear of all incumbrances, within eighteen months from date, all the coal together with the right to mine, coke and carry away the same, underlying that certain tract of land

situate in Green township Indiana Co., Pa. . . . . containing 150 acres; in consideration whereof, the said party of the second part hereby covenant and agree to pay . . . . unto the said parties of the first part . . . . the sum of twenty dollars ($20.00) per acre, 10 dollars on the execution thereof, . . . . and the balance payable as follows: one-third in (9) nine months and the balance in eighteen months from this date, deferred payments to be secured by bond and mortgage on the coal conveyed, in case the land upon examination is found satisfactory, and the parties of the second part elect to take the same upon presentation and delivery of good and sufficient deed clear of all incumbrances, granting all mining and coking rights."

On the trial of the cause, it appeared that Weaver served a written notice on John Sides and his wife, the vendors, on September 20, 1902, one day prior to the expiration of eighteen months from the date of the agreement, that he elected "to take the coal and coal privileges mentioned in said option; the tract of land contains 150 acres and is situate in Green township." So far as the evidence discloses, Weaver did not comply with that part of the agreement which required him to pay one-third of the purchase money in nine months, nor does it appear that he exercised his option to accept the coal other than by the notice above referred to. The learned trial judge charged the jury that the first thing that was necessary for Mr. Sides to do was, "as the article says, present to Mr. Weaver a good and sufficient deed, clear of all incumbrances," and if that had been done on the date of the agreement, it would have been Weaver's duty in nine months thereafter to have paid the one-third of the purchase money and in eighteen months to have paid the balance of the purchase money; that Weaver complied with the contract in tendering to Sides the purchase money just prior to the expiration of eighteen months from the date of the contract. In effect, the learned judge held that by the terms of the agreement it was the duty of the vendors in the first instance to tender a deed to Weaver and that he was required in nine months thereafter to make the first payment and in eighteen months to pay the balance of the purchase money, and that as the vendors had not tendered a deed and Weaver had tendered the purchase money within eighteen months from the date of the agreement, he had complied with the contract, and was entitled to recover

the coal. Entertaining these views, the court directed a verdict for the plaintiff, on which judgment was entered and the defendants have taken this appeal.

We think the learned judge erroneously interpreted the contract of the parties. It was simply an option given by the owners to Weaver to purchase the coal. They were not required to present Weaver with a deed, or take any other action concerning the sale until he had, as provided in the agreement, found the land satisfactory and had exercised his option and elected to purchase. Thereupon it was incumbent on the vendors to present Weaver with a " good and sufficient deed, clear of all incumbrances." Nor was Weaver required to accept a deed for the coal and thereby convert the option into a sale, until he had been given an opportunity to ascertain if the coal was satisfactory to him. By the agreement the option became a sale, and Weaver became a purchaser only " in case the land upon examination is found satisfactory and the parties of the second part (Weaver) elect to take the same." Weaver was, therefore, entitled to such time as the option gave him to examine the coal and determine whether it was satisfactory, and until he had advised the vendors of that fact they were not required to tender a deed, and he was not compelled to accept one.

When was Weaver to exercise his option to purchase the coal? Clearly within nine months from the date of the agreement. This is conclusively shown by the terms of payment set forth in the contract. The purchase money, except the $10.00 hand money, was payable in two installments, in nine months and eighteen months respectively. One-third was payable in nine months after the contract was signed. But there could be no purchase money due because there was no sale until Weaver had elected to accept the coal. Until he had exercised his option to purchase, the installment due by the terms of the agreement in nine months was not payable, and the vendors could not have enforced payment by a suit. The option would not become a sale, and hence the purchase money would not become payable until action on the part of Weaver showing an acceptance of the coal. It is, therefore, apparent that as the parties agreed that one-third of the purchase money—the first payment—should be paid in nine

months, that they contemplated that Weaver should exercise his option to purchase within that period. Such action by him would convert the option into a sale of the coal and make the purchaser liable for that installment of purchase money. This interpretation of the contract is confirmed by the subsequent provision that the balance or two-thirds of the purchase money was payable within eighteen months from the date of the agreement, and the deferred payment was " to be secured by bond and mortgage on the coal conveyed." This clause of the agreement manifestly contemplates an acceptance by Weaver of the coal within nine months and the delivery of a deed by the vendors, in order that a mortgage on the coal " conveyed " might be given by the vendee for the residue of the purchase money. If, as contended by Weaver, he had eighteen months to exercise his option to purchase, the entire purchase money would then be due and payable, and there would be no occasion for a bond and mortgage, as there would be none of the purchase money to secure. All the purchase money was due and payable within eighteen months from the date of the agreement, and if the coal had been accepted the vendors after that date could have compelled its payment. If, however, the vendee's interpretation of the agreement is to prevail, this clause of the agreement would, at his option not to elect to purchase until immediately prior to the expiration of the eighteen months, be wholly unnecessary, and must be disregarded and treated as inoperative. But this construction is contrary to the well-established rule applied in the interpretation of written agreements which requires the agreement to be so construed that, if possible, all the parts thereof be given effect. The enforcement of this rule requires the agreement to be construed as an option exercisable within nine months, and that it was the duty of the vendors, upon the acceptance of the coal within that time, to tender " a good and sufficient deed, clear of all incumbrances," to Weaver, who was required to pay the installment of purchase money then due and secure the deferred payment, in the language of the contract, " by bond and mortgage on the coal conveyed."

The option was crudely and inartificially drawn, but its tenor and the intention of the parties may be ascertained by inter-

preting the instrument as a whole. Our construction gives effect to every part of it, and manifestly carries out the intention of the parties. We are, therefore, of the opinion, that the learned trial judge erroneously interpreted the contract entered into by the parties, and should not have directed a verdict for the plaintiff.

The fourth assignment of error is sustained, the judgment is reversed, and judgment is now entered for the defendants.